■ R. HOE & CO., INC., Respondent, v. CROWN CORK & SEAL COMPANY, Appellant.— Judgment in favor of plaintiff, unanimously modified, on the law and the facts, so as to reduce the net amount thereof by the sum of $11,399, and as so modified, affirmed, on the law, on the facts, and in the exercise of discretion, with $50 costs to plaintiff-respondent. A motion for a mistrial is addressed to the sound discretion of the Justice presiding at the trial. The trial, resulting in the judgment herein, had commenced on February 5, 1964. On February 25, the fourteenth day of trial, and in the course of the tenth day of the presentation of the defense, Mr. Shapiro, trial counsel for the defendant, suddenly took ill and was taken to a hospital. Upon resumption of the trial, on February 26, Mr. Bressler, who was assisting trial counsel, moved for a mistrial. Argument on the motion for a mistrial was continued on February 27. Plaintiff's counsel suggested a continuance of the trial for a reasonable period to assist defendant's counsel. No indication was forthcoming from defendant's attorneys as to the time required if a continuance was granted. The Trial Justice denied the motion for a mistrial, and continued the case to March 2. On March 2, defendant's attorneys made no application for additional time. The Trial Judge rejected the argument of Mr. Bressler that no one, for the foreseeable future, would be able to try the case for defendant. In the opinion of the Trial Justice, defendant was "not bereft of counsel able and capable of continuing this trial", even though deprived of the services of Mr. Shapiro. In our opinion, under all of the circumstances, the Trial Justice properly exercised his discretion in denying defendant's motion for a mistrial. We do not reach the question as to whether a longer continuance should have been granted, to permit other counsel to proceed with the trial, for the simple reason that no such relief was sought from the trial court. The continuance to March 2 was granted by the trial court, on its own motion, at the suggestion of plaintiff's counsel. Because of its failure to ask for a continuance, or even to object to the length of the continuance granted by the trial court, defendant may not on this appeal raise the question of the reasonableness of the length of the continuance. Had defendant contended before the trial court that more time was needed to prepare for carrying on the trial, and had made a record of the reasons why more time was required, the trial court would have had some basis on which to determine whether more time was essential, and the trial court's decision could have been reviewed by this court. We may not presume, on the basis of the record before us, that had counsel for defendant requested a further reasonable continuance, when the trial resumed on March

2, in order to prepare to go forward with the trial, that such a request would not have been granted. In reaching our conclusion that a mistrial was properly denied, we have also, in the exercise of discretion, considered the merit, or lack of merit, of defendant's counterclaims. As already indicated, the trial had progressed for a period of 14 days when defendant's counsel was unfortunately stricken. From the evidence adduced, it would seem highly improbable that defendant could overcome the effectiveness of the replacement and settlement agreement of May 1, 1962 with its mutual releases of all claims — releases which would be dispositive of defendant's claims. Moreover, appellant's counterclaims for consequential damages of $750,000 depended upon alleged misrepresentations in the sale of two high-speed metal decorating presses under a contract dated July 6, 1959. That contract, in paragraph 9, specifically provided that plaintiff "shall be under no liability for loss or damage (direct, consequential or otherwise) under this contract" with certain exceptions which did not include the claims made by appellant. When it appeared that plaintiff was having some trouble with another customer with the performance of the high-speed presses, defendant, in August, 1959, agreed to accept the two presses, contracted for in July, equipped with standard feed tables. Noteworthy is the fact that early in 1962, the defendant ordered three additional standard presses which were delivered and installed in defendant's plants in Florida, Illinois, and Maryland in the Fall of 1962. In the meantime, the parties reached an agreement for the replacement of the two high-speed presses. That agreement of May 1, 1962, by its terms specifically superseded the July 6, 1959 contract, and provided "that any liability on the part of either party to the other in respect of said agreement [the July, 1959 contract] is hereby nullified". This agreement provided for the replacement of the high-speed with two standard presses. Plaintiff made the replacement, but defendant returned only one of the high-speed presses. So that at the time of suit, the defendant owed plaintiff for the three standard machines ordered in the Spring of 1962 and the parts incident to their installation, and for the price of the high-speed machine it failed to return. These writings between the parties negate the bases of defendant's counterclaims. As already indicated, it was also apparent at the trial that defendant would not be able to meet its difficult burden of establishing that the release in the May 1, 1962 agreement was procured by fraud. Hence, at the time defendant's motion for a mistrial was denied, there was considerable evidence in the record demonstrating the lack of merit in defendant's counterclaims. There is no dispute, however, that if plaintiff was to recover on its causes of action, that defendant would be entitled to a credit of $11,399, representing the difference between the prices of presses originally delivered and those with which they were replaced. Respondent states that it stands ready to allow this credit of $11,399 against the judgment. That credit, however, does not depend upon respondent's gratuitous offer, but is required by the record. It should have been incorporated in the judgment. The judgment must therefore be modified to indicate the allowance of that credit. Concur — Breitel, J. P., Valente, McNally, Stevens and Steuer, JJ.